UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIF CITY II, LP** | |
| *Plaintiff,* | Case No. |
| v. | |
| **CALIFORNIA PIZZA KITCHEN, INC.** | |
| *Defendants.* | |

## CIVIL ACTION COMPLAINT

Plaintiff MIF City II, LP ("Plaintiff" or "MIF"), by and through its undersigned counsel, hereby files this following Complaint against Defendant California Pizza Kitchen, Inc. ("Defendant" or "CPK") and avers as follows:

### PARTIES

1. Plaintiff MIF is a limited partnership organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at Two Bala Plaza, Suite 526, Bala Cynwyd, PA 19004 and conducts operations in Philadelphia, Pennsylvania.

2. Upon information and belief, Defendant California Pizza Kitchen, Inc. is a Delaware corporation with a principal place of business at 6053 West Century Boulevard, 11th Floor, Los Angeles, CA 90046.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00

4.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) because Defendant conducts business in this venue.

## RELEVANT BACKGROUND

5.      MIF is the owner of certain real estate and a shopping center located at 4040 City Avenue, Philadelphia, PA (the "Shopping Center").

6.      MIF and CPK entered into a Lease Agreement on or about January 31, 2007 as well as subsequent Amendments thereto (collectively, the "Lease") with respect to a portion of a shopping center (the "Shopping Center") situated at 4040 City Avenue, Philadelphia, PA (the "CPK Premises").  A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

7.      The CPK Premises is located on the second floor of the Shopping Center, with spaces for other commercial tenants located below the CPK Premises, on the Shopping Center's ground floor.

8.      Pursuant to Section C of the Second Amendment to the Lease, dated September 12, 2007 (the "Second Amendment"), MIF permitted CPK to install plumbing lines below the floor slab of the CPK Premises and within another commercial space located directly below the CPK Premises ("the Downstairs Premises").  A true and correct copy of the Second Amendment is attached hereto as Exhibit "B" and incorporated herein by reference.

9.      Pursuant to Section 1 (iv) of the Second Amendment, CPK agreed to be responsible for "immediately repairing any damage to [the Downstairs Premises] caused by the performance of any work by [CPK] ." *See* Exhibit "B".

10.     Pursuant to Section 1(iii) of the Second Amendment to the Lease, CPK agreed to indemnify and hold MIF harmless with respect to the plumbing work described in Section 1 (iv) of the Second Amendment. *See* Exhibit "B".

11. CPK's performance of the plumbing work contemplated in the Second Amendment to the Lease has caused damages to MIF, the Shopping Center, and MIF's other tenants

12. The Downstairs Premises was initially leased from MIF to another tenant, Potbelly Sandwich Works, LLC ("Potbelly"). A true and correct copy of the Potbelly Lease is attached hereto as Exhibit "C".

13. Specifically, following CPK's performance of the plumbing work and other physical work contemplated by the Second Amendment to the Lease and other work performed at CPK's direction, sewage began to constantly seep from the CPK Premises into the Downstairs Premises, which caused the Downstairs Premises to experience significant leaks and other problems.

14. This damage caused by CPK forced Potbelly to vacate the Downstairs Premises and to terminate the Potbelly Lease prior to the end of Potbelly's lease term. *See* Exhibit "C" at Article 2.

15. At the time Potbelly vacated the Downstairs Premises, Potbelly was paying rent, CAM, taxes and insurance to MIF in the amount of $197,495.04 per year. *See* Exhibit "C" at Article 4.

16. Following Potbelly's departure, MIF endured a two (2) year vacancy of the Downstairs Premises and a concomitant loss of revenue.

17. Finally, on or about May 15, 2017, a new tenant, DJ Kitchen Chinese Cuisine ("DJ Kitchen") was retained to occupy the Downstairs Premises, though at a rent rate of $33 per square foot per year. This new rent of $100,175.04 per year is $40.25 per square foot lower than what MIF had been receiving from Potbelly. *See* a true and correct copy of the DJ Kitchen Lease, attached hereto as Exhibit "D".

18. However, the persistent plumbing problems, chronic leaks, and other issues arising from the CPK Premises damaged the Downstairs Premises and DJ Kitchen's construction work in the Downstairs Premises, caused DJ Kitchen to incur significant expenses, indefinitely delayed DJ Kitchen's occupation of the Downstairs Premises, and caused DJ Kitchen to demand damages from MIF. Sample photographs identifying such leaks and damages are attached hereto as Exhibit "E".

19. Specifically, the Downstairs Premises has suffered significant damages as a result of the leaks emanating from the CPK Premises, including, but not limited to:

    a. Leaks in and damage to the utility room;

    b. Leaks in and damage to two (2) bathrooms;

    c. Leaks in and damage to the beverage area;

    d. Leaks in and damage to the kitchen area, in the hallway; and

    e. Leaks in and damage to the front window area.

20. These leaks began in approximately December 2017 and persisted throughout January 2018, February 2018, March 2018, and April 2018.

21. Because of these leaks, DJ Kitchen has not yet opened for business.

22. Upon information and belief, these leaks will continue to recur as a result of Defendant's failure to remedy them.

23. The Downstairs Premises has suffered significant damages as a result of the leaks emanating from the CPK Premises, including, but not limited to:

    a. Delay of at least three (3) months in DJ Kitchen's occupation of the Downstairs Premises;

b. Delay of at least six (6) months in the construction work related to such occupation;

c. Significant damages to the materials and fixtures involved in the construction work;

d. Replacement of lighting in the Downstairs Premises;

e. Re-painting of numerous areas in the Downstairs Premises;

f. Replacement of finishes in the Downstairs Premises;

g. Replacement of the Downstairs Premises's kitchen ceiling tiles;

h. Removal of grease and waste water caused by the leaks;

i. Constant cleaning and sanitation of areas affected by the leaks; and

j. Disruption of construction work and business at the Downstairs Premises on several occasions, as a result of plumbers sent by CPK to replace pipes in the Downstairs Premises.

24. As a result of these damages to the Downstairs Premises, DJ Kitchen has demanded reimbursement of the rent it has paid to Plaintiff and reimbursement of other expenses incurred by DJ Kitchen.

25. MIF advised CPK that the faulty plumbing installed by the latter must be corrected immediately to prevent further damages, but CPK has failed to address these issues. Specifically, MIF sent formal Notice of Default to CPK on April 3, 2018, which default still has not been cured by CPK. A copy of such Notice is attached hereto as Exhibit "F".

26. Therefore CPK is responsible for the repair of the defective plumbing as well as all losses suffered by MIF, including, but not limited to, any damage caused by the plumbing defects

to the premises below the Premises, loss of revenue, loss of rent for the Downstairs Premises, and expenses to cure the defects.

## COUNT I
## (Breach Of Contract)

27. MIF incorporates as if fully set forth herein the allegations of all preceding paragraphs of this Complaint.

28. The Lease is a valid and binding contract, enforceable in accordance with its terms.

29. In breach of the Lease, CPK has caused damages to the CPK Premises and the Downstairs Premises, and failed to repair such damages.

30. CPK further breached the Lease by failing to indemnify and hold MIF harmless with respect to the plumbing work CPK performed.

31. CPK's breach of the Lease has caused MIF to suffer losses including lost rent, lost revenue, property damage, and costs of litigation.

## COUNT TWO

## (Breach of Covenant of Good Faith and Fair Dealing)

32. MIF incorporates as if fully set forth herein the allegations of all preceding paragraphs of this Complaint.

33. The Lease contained an implied covenant of good faith and fair dealing, pursuant to which CPK agreed to deal in good faith and fairly with MIF.

34. MIF has fully performed all the terms of the Lease and CPK's performance has not been excused.

35. Notwithstanding this implied covenant, CPK engaged in bad faith business practices including failure to install adequate plumbing systems and failure to repair faulty plumbing systems at the CPK Premises.

36. As a direct result of CPK's breach, MIF has suffered damages in an amount to be determined at trial, plus interest, attorneys' fees, costs and any other relief the Court deems equitable and just.

WHEREFORE, MIF prays for the following relief:

a. compensatory damages in an amount to be determined at trial, but not less than $150,000.00, plus interests and costs;

b. reasonable attorney's fees;

c. costs and interest; and

d. such other relief as the Court deems appropriate.

**Respectfully submitted,**

**ROYER COOPER COHEN BRAUNFELD LLC**

By: _____
Barry L. Cohen, Esquire
Joshua Upin, Esquire
Two Logan Square
100 N. 18th St. Suite 710
Philadelphia, PA 19103
Phone: (267) 839-1000
Fax: (484) 362-2630
Email: bcohen@rccblaw.com
Email: jupin@rccblaw.com

Date: August 3, 2018                *Attorneys for Plaintiff MIF City II, LP*