**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIF CITY II, LP | : | |
| Plaintiff/Counterclaim Defendant | : | |
| v. | : | |
| | : | No. 2:18-cv-03302-MAK |
| | : | |
| CALIFORNIA PIZZA KITCHEN, INC. | : | Jury Trial Demanded |
| Defendant/Counterclaim Plaintiff | : | |
| | : | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF CALIFORNIA PIZZA KITCHEN, INC.

California Pizza Kitchen, Inc. ("CPK"), by and through its undersigned counsel of record, hereby submits its Answer and Affirmative Defenses in response to the First Amended Complaint of Plaintiff MIF City II, LP ("Plaintiff" or "MIF"), along with its Counterclaim against MIF, and states as follows:

### As to "PARTIES"

1.      Admitted, upon information and belief.

2.      Admitted, upon information and belief.

3.      Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

4.      Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

5.      Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

6.      Admitted only that Jerald S. Batoff and Lauren Batoff are adult individuals; their citizenship is unknown to CPK after reasonable investigation.

7.      Admitted only that Robin Batoff is an adult individual; her citizenship is unknown to CPK after reasonable investigation.

8.      Denied.   Rather, CPK is a Delaware corporation with corporate headquarters located at 12181 Bluff Creek Drive, Playa Vista, CA 90094.

As to "JURISDICTION AND VENUE"

9.      The averments of the corresponding paragraph are conclusions of law to which no response is required, are therefore denied.

10.      The averments of the corresponding paragraph are conclusions of law to which no response is required, are therefore denied.

As to "RELEVANT BACKGROUND"

11.      Admitted, upon information and belief, that MIF is the owner of certain real estate and a shopping center located at 4040 City Avenue, Philadelphia, Pennsylvania (the "Shopping Center").

12.      Admitted that MIF, as landlord, and CPK, as tenant, entered into a written lease agreement, dated January 31, 2007 (the "Lease"), whereby CPK leased a unit within the Shopping Center for the purposes of operating a California Pizza Kitchen restaurant (the "CPK Premises"), and that MIF and CPK subsequently entered into several amendments to the Lease.  The document attached as Exhibit "A" to the Complaint appears to be the Lease (without amendments) through page number 34 thereof; however, the exhibits/attachments which follow do not appear to be complete, and accordingly, CPK admits denies that the Complaint attaches a true and correct copy of the Lease.

2

13.     Denied as stated.  The two-floor Shopping Center consists of three units in one building, and all three units are occupied by restaurants.  The CPK Premises occupies one unit on the upper floor.  Directly adjacent to the CPK Premises on the upper floor is a unit occupied by a Chipotle restaurant (the "Chipotle Premises").  On the lower floor of the Shopping Center is a third unit, currently occupied by a restaurant called DJ Kitchen and formerly occupied by a Potbelly restaurant (identified in the Complaint, and herein, as the "Downstairs Premises").

14.     Admitted that by writing dated September 12, 2007, MIF and CPK entered into a second amendment to the Lease (the "Second Amendment") whereby MIF agreed to allow CPK to enter the Downstairs Premises to install plumbing lines below the floor of the CPK Premises and above the level of the joists in the Downstairs Space, as part of CPK's 2007 original tenant work for its space.  The specific terms of the Second Amendment, which is attached to the Complaint as Exhibit "B", speak for themselves.

15.     Denied.  The averments of the corresponding paragraph characterize a document in writing which speaks for itself, and accordingly no response is required and said averments are deemed denied.  To the extent the terms of the document differ from the characterization set forth in the corresponding paragraph, said characterization is denied.  By way of further response, it is denied that the referenced provision has any applicability to the claims alleged in the Complaint. Section 1(iv) of the Second Amendment pertains to CPK's entry into the Downstairs Premises to install plumbing lines as part of its original tenant work in 2007.  This work, which was to be completed by October 9, 2007 pursuant to the Second Amendment, was completed over a decade ago. The provision would only have required CPK to be responsible for immediately repairing damage to the Downstairs Premises caused by the performance of the work.  For example, if a window or a wall in the Downstairs Premises was damaged during the plumbing line installation

work in 2007, CPK would have been obligated to fix it.  The work referenced by the provision was completed over a decade ago. The provision was certainly not intended as any sort of limitless warranty as Plaintiff seems to claim in the Complaint.   Accordingly, the provision has no applicability to the alleged plumbing/sewage issues complained of by Plaintiff in this action.

16.     Denied.  The averments of the corresponding paragraph characterize a document in writing which speaks for itself, and accordingly no response is required and said averments are deemed denied.  To the extent the terms of the document differ from the characterization set forth in the corresponding paragraph, said characterization is denied.  By way of further response, it is denied that the referenced provision has any applicability to the claims alleged in the Complaint. Section 1(iii) of the Second Amendment pertains to CPK's entry into the Downstairs Premises to install plumbing lines as part of its original tenant work in 2007.  Accordingly, just as with Section 1 (iv) of the Second Amendment, it has no applicability to the claims alleged by Plaintiff in this action.

17.     Denied.  To the contrary, the work contemplated in the Second Amendment did not cause any such damages, and did not cause the alleged plumbing, sewage and/or leakage issues complained of in Plaintiff's Complaint as CPK understands them.  CPK did not cause the alleged issues complained of in Plaintiff's Complaint and has no responsibility to repair them, nor is CPK otherwise liable for any such alleged issues.   At all pertinent times, CPK complied with its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair. CPK did not cause the alleged issues complained of in Plaintiff's Complaint and has no responsibility to repair them, nor is CPK otherwise liable for any such alleged issues. The alleged plumbing, sewage and/or leakage issues complained of in Plaintiff's Complaint, upon information and belief, were caused by MIF's failure to properly maintain and/or repair components of the

4

plumbing and/or sewage systems serving the Shopping Center, including the sanitary sewer main, over which CPK has no control or responsibility, and otherwise comply with its obligations to properly maintain and repair the Shopping Center. Additionally, upon information and belief, there has been significant settling of the land in and around the Shopping Center, causing damage to the plumbing and sewage systems.. MIF's failures to properly address the plumbing and sewage problems at the Shopping Center include an October, 2014 sanitary sewer main break, which upon information and belief was caused by MIF's neglect with respect to the same and/or with respect to property settling issues and which subsequent investigation has shown to have caused or contributed to damage to pipes in and/or below the CPK Premises, including degradation of system components serving the Shopping Center as well as within the CPK Premises and the Downstairs Premises    MIF's failures to properly address the property settling issues have caused, among other things, large cracks at the property, and have impacted the slope of the plumbing/sewage lines outside of the CPK Premises, causing a p-trap to break and systems to backup. Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

18.    Admitted only, upon information and belief, that Potbelly once occupied the Downstairs Premises. As to the terms of the alleged lease between MIF and Potbelly, CPK is a stranger to the Lease and therefore can neither admit nor deny Plaintiff's allegations regarding the same and, accordingly, denies them.

19.    Denied. To the contrary, the work contemplated in the Second Amendment did not cause any such damages, and did not cause the alleged plumbing, sewage and/or leakage issues complained of in Plaintiff's Complaint as CPK understands them. By way of further response, see above answer to paragraph 17 of the Complaint, incorporated by reference herein as if set forth in full.

20.     Denied.  CPK did not cause the alleged damage nor did it in any way cause or contribute to Potbelly's alleged decision to vacate the Downstairs Premises and terminate its lease. By way of further response, see above answer to paragraph 17 of the Complaint, incorporated by reference herein as if set forth in full.

21.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

22.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

23.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph.  These allegations are therefore denied.

24.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph as to DJ Kitchen's alleged operations or its alleged demands to MIF.  CPK denies that it in any way caused or contributed to any alleged expenses, delays, damages or other problems that were allegedly incurred by DJ Kitchen.  To the extent DJ Kitchen experienced any leaks, they were not caused by CPK.

25.     (including all subparts).  Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph as to the areas of the Downstairs Premises allegedly damaged.  CPK denies that it in any way caused or contributed to any alleged damages to the Downstairs Premises.  Further, upon

6

information and belief, the Downstairs Premises experienced leaks in various parts of its restaurant, including below the Chipotle Premises, further evidencing that CPK is not the cause of the alleged leaks complained of in Plaintiff's Complaint.  Further still, at all pertinent times, CPK complied with its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.  Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

26.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph and therefore denies them.

27.     Denied.  DJ Kitchen is open for business.  CPK denies that it in any way caused or contributed to any alleged delay in opening.

28.     Denied.  CPK did not cause any such alleged leaks and therefore cannot be responsible for any recurrence thereof, and in any event is not responsible for repairing such alleged leaks.  Further still, at all pertinent times, CPK complied with its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.  Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

29.     (including all subparts).  Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph as to Plaintiff's allegations of areas damaged or as to DJ Kitchen's operations.  CPK denies that it in any way caused or contributed to any alleged damages to the Downstairs Premises, and further, denies that it in any way caused or contributed to any alleged expenses, delays, damages or other problems that were allegedly incurred by DJ Kitchen.   Further still, at all pertinent times, CPK complied with all of its obligations under the Lease and the amendments

thereto with respect to maintenance and/or repair.  Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

30.     Denied.  After reasonable investigation, CPK is without knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph as to DJ Kitchen's alleged operations or its alleged demands to MIF.  CPK denies that it in any way caused or contributed to any alleged expenses, delays, damages or other problems that were allegedly incurred by DJ Kitchen.  To the extent DJ Kitchen experienced any leaks, they were not caused by CPK.

31.     Denied.  While MIF did send the letters attached as Exhibit "F" to the Complaint to CPK, MIF did not send CPK formal notice of alleged default which meets the notice requirements of the Lease.  For example, it sent both alleged notices of default on the same day, evidencing MIF's bad faith with regard to its compliance with Lease terms.  CPK denies that it breached the Lease, denies that it caused the alleged plumbing/sewage/leakage issues, denies that it is in any way responsible for correcting those alleged issues, denies that its plumbing was installed in a faulty manner, and denies that it caused or contributed to any damages or expenses suffered by MIF, DJ Kitchen or Potbelly.

32.     Denied.  CPK denies any and all liability to MIF.  CPK did not cause or contribute to any losses allegedly suffered by MIF, did not cause or contribute to the alleged plumbing/sewage/leakage issues complained of in Plaintiff's Complaint, and is not in any way responsible for correcting those alleged issues or for any of the damages alleged by MIF.

### As to Count I-Breach of Contract

33.     CPK incorporates by reference all preceding paragraphs as if set forth in full herein.

34.     Denied as a legal conclusion.  By way of further response, CPK did not breach the

Lease.

35.     Denied.  CPK did not breach the Lease and did not cause any damages alleged in the Complaint, and CPK is not responsible for the repair of any such alleged damages.  Further still, at all pertinent times, CPK complied with all of its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.   Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

36.     Denied.  CPK did not breach the Lease, nor does it have any duty to indemnify and hold MIF harmless as to any of the damages alleged in the Complaint.  Further still, at all pertinent times, CPK complied with all of its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.  Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

37.     Denied.  CPK did not breach the Lease and did not cause MIF to suffer any losses whatsoever.  CPK denies any and all liability to CPK.  Further, CPK demands recovery of attorneys' fees and costs incurred in connection with this action, pursuant to Article 21.5 of the Lease.

### As to Count II-Breach of Covenant of Good Faith and Fair Dealing

38.     CPK incorporates by reference paragraphs 1-37, above, as if set forth in full herein.

39.     Denied as a legal conclusion.  Further, under Pennsylvania law, a duty of good faith and fair dealing as to performance of a contract may be implied, but is not the basis for a cause of action separate and apart from an alleged action for breach of contract.

40.     Denied.

41.     Denied.  To the contrary, CPK at all times has acted in good faith.  Further, as is set forth above, CPK did not cause or contribute to any of the damages alleged in Plaintiff's

Complaint, nor responsible for any repairs allegedly associated therewith.  Further still, at all pertinent times, CPK complied with all of its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.  Additionally, to CPK's knowledge, there no active leaks into the Downstairs Premises.

42.     Denied. Denied.  CPK did not breach the Lease or any covenants related thereto, express or implied, and did not cause MIF to suffer any losses whatsoever.  CPK denies any and all liability to CPK.  Further, CPK demands recovery of attorneys' fees and costs incurred in connection with this action, pursuant to Article 21.5 of the Lease.

WHEREFORE, California Pizza Kitchen, Inc., respectfully demands judgment in its favor and against MIF City II, LP, as to all claims asserted in Plaintiff's Complaint, including the relief prayed for by MIF City II, LP, and demands attorneys' fees and other litigation costs, along with such further relief as may be granted.  California Pizza Kitchen demands a jury trial on all issues.

## AFFIRMATIVE DEFENSES

1.     CPK incorporates by reference all preceding paragraphs as if set forth in full herein.

2.     MIF's Complaint fails to set forth a claim upon which relief may be granted.

3.     Any damages which MIF may have suffered--which are denied—were caused in whole or in part by MIF.

4.     MIF's claims are due in whole or in part to act(s) or omission(s) of parties other than CPK, over which CPK has no control or right of control.

5.     CPK did not cause or contribute to MIF's alleged injuries in any manner whatsoever.

6.     CPK had no actual or constructive notice of the alleged damages alleged by Plaintiff.

7.      MIF's claims are barred and/or limited because CPK is a stranger to the Potbelly Lease.

8.      MIF's claims are barred and/or limited because CPK is a stranger to the DJ Kitchen Lease.

9.      MIF's claims are barred and/or limited because CPK has no duty whatsoever with respect to MIF's obligations to Potbelly or any damages alleged by Potbelly.

10.     MIF's claims are barred and/or limited because CPK has no duty whatsoever with respect to MIF's obligations to DJ Kitchen or any damages alleged by DJ Kitchen.

11.     MIF's claims are barred and/or limited by its failure to timely give notice of its alleged damages to CPK.

12.     MIF's claims are barred and/or limited to the extent the damages which MIF seeks in this action are not recoverable as a matter of law.

13.     MIF's claims are barred and/or limited to the extent the damages which MIF seeks in this action are unreasonable.

14.     MIF's claims are barred and/or limited to the extent the damages which MIF seeks are not reasonably foreseeable.

15.     MIF's claims are barred and/or limited because MIF's allegations are not related to the subject matter of the Second Amendment to the Lease.

16.     MIF's claims are barred and/or limited because CPK does not owe MIF a duty of indemnification as to any alleged losses or damages claimed by MIF.

17.     MIF's claims are barred and/or limited because there is no connection between the work which was the scope of the Second Amendment and MIF's alleged damages, including MIF's alleged vacancy problem.

18.     MIF's claims are barred and/or limited to the extent that the responsibility for the plumbing and/or sewer systems at the property, or any components thereto, including responsibility for the care, maintenance, repair and operation thereof, rests solely upon parties other than CPK.

19.     MIF's claims are barred because CPK complied with all of its obligations under the Lease and the amendments thereto with respect to maintenance and/or repair.

20.     MIF's claims are barred and/or limited to the extent MIF's claims arise from its own responsibility for the plumbing and/or sewer systems at the property, or any components thereto, including responsibility for the care, maintenance, repair and operation thereof.

21.     MIF's claims are barred and/or limited because MIF caused the plumbing, sewage and leakage issues complained of in the Complaint.

22.     MIF's claims are barred and/or limited by its breach of the Lease by, among other things, its failure to keep the premises in good repair, including as required by Article 12.1 and Article 12.2 of the Lease.

23.     MIF's claims are barred and/or limited by MIF's failure to provide proper notice to CPK pursuant to the Lease, including as required by Article 18 thereof.

24.     MIF's claims are barred by the terms of the Lease.

25.     MIF's claims are barred because MIF has not identified any a valid contractual basis for its claims.

26.     MIF's claim for for alleged breach of the covenant of good faith and fair dealing is barred because such a claim is not legally cognizable.

27.     MIF's claims are barred by the terms of the Second Amendment to the Lease.

28.     To the extent it is determined that any of the plumbing/sewage line issues

12

referenced in the Complaint stemmed from the tenant work performed pursuant to the Lease and/or the Second Amendment to the Lease, which is denied, MIF's claims are barred and/or limited by MIF's failures to comply with its obligations regarding this initial work at the premises.

29.     MIF's claims are barred and/or limited by its own negligence or neglect.

30.     MIF's claims are barred and/or limited by failure to mitigate damages.

31.     MIF's claims are barred and/or limited by estoppel.

32.     MIF's claims are barred and/or limited by laches.

33.     MIF's claims are barred and/or limited by MIF's unclean hands.

34.     MIF's claims are barred and/or limited due to waiver.

35.     MIF's claims are barred and/or limited to the extent MIF has failed to join any necessary parties.

36.     MIF's claims are barred by Pennsylvania's four-year statute of limitations for breach of contract actions.

37.     To the extent MIF's claims can be read as asserting anything other than a breach of contract claim, MIF's claims are barred by Pennsylvania's two-year statute of limitations for tort actions.

38.     MIF's claims are barred and/or limited by CPK's right to recovery of attorneys' fees and costs incurred in connection with this action pursuant to Article 21.5 of the Lease, the demand for which is asserted by CPK.

39.     MIF's claims are barred and/or limited by CPK's right to setoff.

WHEREFORE, California Pizza Kitchen, Inc., respectfully demands judgment in its favor and against MIF City II, LP, as to all claims asserted in Plaintiff's Complaint, including the relief prayed for by MIF City II, LP, and demands attorneys' fees and other litigation costs, along with

such further relief as may be granted. California Pizza Kitchen demands a jury trial on all issues.

**COUNTERCLAIM**

**(Breach of Contract)**

1.      CPK incorporates by reference all preceding paragraphs as if set forth in full herein.

2.      Pursuant to Article 12.1 of the Lease, MIF is obligated to keep the general systems of plumbing at the Shopping Center in good repair.  See Lease at pp. 16-17, Article 12.1 (a true and correct copy of which is attached hereto as Exhibit 1, without exhibits thereto).

3.      Article 12.1 of the Lease provides, *inter alia,* that MIF "agrees to keep said general systems in repair so that the portions thereof which are a part of and serve the Premises will function properly if such portions be kept in good condition and repair by Tenant." See Exhibit 1, p.17, Article 12.2.

4.      Further, Article 12.2 of the Lease requires MIF to maintain other areas of the premises in good condition and make necessary repairs, including the roof, foundation, footings, and all structural portions of the premises and adjacent sidewalks and alleys.  See Exhibit 1, p. 17, Article 12.2.

5.      Article 12.2 of the Lease also requires MIF to repair any and all damage, including to fixtures and equipment, which may result from MIF's failure to make timely repairs following notice.  See Exhibit 1, p. 17, Article 12.2.

6.      MIF is in breach of the Lease for its failures to honor the terms of Articles 12.1 and 12.2 of the Lease.

7.      CPK suffered plumbing and/or sewage issues at the CPK Premises, caused by MIF's failure to properly maintain plumbing and sewage systems and properly address the significant property settlement issues that have manifested at the Shopping Center.

8. At each turn, rather than taking prompt and effective action to address these significant issues in accordance with MIF's obligations under the Lease, MIF has sought to shift the blame onto CPK, forcing CPK to expend significant sums to affect its own repairs rather than enduring prolonged periods of disruption. In the past three years alone, CPK has expended thousands of dollarsin expenses relating to the plumbing/sewage backup and leakage issues, all because MIF failed to perform its obligations under the Lease.

9. Indeed, MIF's instant lawsuit is simply its latest effort to shift blame for its own failures onto CPK and pressure CPK into expending yet additional sums to remedy problems caused by MIF.

10. Because of the repeated nature of the leakage/backup issues, CPK has undertaken extensive investigation, even alongside MIF's representatives, involving onsite inspections and testing and engineering reviews.

11. Said investigation indicates that the cause of the plumbing and sewage issues is MIF's failure to properly maintain the general plumbing/sewage lines serving the Shopping Center, and the related property settling issues which have negatively impacted the piping. The damages caused by MIF's failures have harmed the CPK Premises and the Downstairs Premises.

12. MIF's insistence on blaming allegedly faulty installation of plumbing lines below the floor slab of the CPK Premises is simply not supported by the facts. Engineering review and onsite investigation demonstrate that those lines were correctly installed. Further, CPK has always taken all necessary steps to maintain the lines.

13. The premises experienced significant land settling issues for a number of years. Those settlement issues have resulted in the exertion of significant physical pressure on the plumbing lines which serve the Shopping Center. As a result, the slope of the plumbing/sewage

lines outside of the CPK Premises has been impacted, even causing a p-trap to break and systems to backup.

14.     Indeed, upon information and belief, in October of 2014, MIF experienced a break in its sanitary sewer main line, resulting in severe backups and/or flooding in various areas of the Shopping Center, including the CPK Premises and the Downstairs Premises (occupied by Potbelly at the time).

15.     The strain and burden put on the plumbing/sewage systems caused by MIF's neglect has never been adequately addressed by MIF, resulting in degraded pipes and ongoing, periodic leakage and/or backup issues.

16.     MIF never took adequate measures to address the setting issues, leading to undue strain on the plumbing lines serving the Shopping Center, as well as the lines under the floor slab of the CPK Premises.

17.     MIF's neglect has forced CPK to incur significant repair expenses and suffer additional damages in the form of business disruption.

18.     CPK would not have suffered these damages, including property damage, business disruption and costs incurred in making repairs and undertaking related investigative efforts, but for MIF's breach of the Lease.

19.     Further still, in addition to the significant plumbing issues, MIF's neglect in maintaining the Shopping Center has caused CPK to experience leaks in its roof at the CPK Premises.

20.     On numerous occasions spanning over a year, the roof at the CPK Premises leaked in several different areas throughout the restaurant, causing water infiltration into the CPK restaurant and buildup of pools of water, including on walking surfaces and on restaurant

equipment, causing property damage and disruption to CPK's business.

21.    MIF repeatedly made promises to remedy the roof leaks but to date has failed to undertake adequate repairs.

22.    The roof leaks persist to this date.

23.    MIF is in breach of Articles 12.1 and 12.2 of the Lease due to its persistent failures to maintain the premises and undertake adequate repairs.

24.    CPK placed MIF on notice of MIF's defaults of the Lease in writing, but to date, MIF has failed to cure its defaults.

25.    CPK has fully performed all the terms of the Lease.

26.    All conditions precedent have occurred or been performed.

27.    As a direct result of MIF's breach of the Lease, CPK has suffered damages in an amount to be determined at trial, plus interest, attorney's fees and costs as provided for in the Lease, plus such other relief as may be required.

WHEREFORE, CPK demands judgment in its favor and against MIF, including recovery of compensatory damages, interest, costs, reasonable attorneys' fees, and such further relief as the Court deems appropriate.  California Pizza Kitchen demands a jury trial on all issues.

[signature on following page]

Date:  October 11, 2018

Respectfully submitted,

MARGOLIS EDELSTEIN

*/s/Mohammad A. Ghiasuddin*
Mohammad A. Ghiasuddin, Esq.
Pa. Bar No. 83925
The Curtis Center, Suite 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337
Telephone: (215) 931-5802
Fax: (215) 922-1772
Email: mghiasuddin@margolisedelstein.com
*Counsel for Defendant/Counterclaim Plaintiff*
*California Pizza Kitchen, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 11, 2018, the Answer, Affirmative

Defenses and Counterclaim of California Pizza Kitchen, Inc., was caused to be filed with the

Clerk of the Court and served upon all counsel of record identified via the CM/ECF system.

Barry L. Cohen, Esq.
Royer Cooper Cohen Braunfeld, LLC
Two Logan Square
100 N. 18th St. Suite 710
Philadelphia, PA 19103
bcohen@rccblaw.com
*Counsel for Plaintiff,*
*MIF City II, LP*

<u>/s/ Mohammad A. Ghiasuddin</u><br>
Mohammad A. Ghiasuddin, Esquire<br>
<i>Counsel for Defendant/Counterclaim Plaintiff</i><br>
<i>California Pizza Kitchen, Inc.</i>